**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

LORI J. MEEKO,                          :        CIVIL ACTION NO. **3:CV-11-1409**
                                        :
                    Plaintiff           :        (Judge Caputo)
                                        :
        v.                              :        (Magistrate Judge Blewitt)
                                        :
SOUTHWESTERN ENERGY                     :
PRODUCTION COMPANY,                     :
                                        :
                                        :
                    Defendant           :


**REPORT AND RECOMMENDATION**

**I. Procedural Background.**

On July 22, 2011, Plaintiff, Lori J. Meeko, filed a counseled Complaint in the Court of

Common Pleas of Bradford County, Pennsylvania, seemingly alleging breach of contract,

intentional infliction of emotional distress ("IIED"), and fraud against Defendant Southwestern

Energy Production Company ("SEPCO"), arising out of a contractual relationship between the

two parties.[1]  (Doc. 1, Ex. A). The case was removed by Defendant SEPCO to the Middle

_____

[1]Even though the Plaintiff is now represented by counsel, we take judicial notice that
Ms. Meeko's previous counsel withdrew from the case, partially because he concluded that
her claims were non-meritorious. Previous counsel's Petition to Withdraw Appearance
noted that Ms. Meeko "insists on pursuing an objective that the Petitioner considers
repugnant and with which the lawyer has a fundamental disagreement." (Doc. 14, p. 3).
        We also note that neither Plaintiff's Complaint nor any of her filings actually have
ever clearly specified the legal theories upon which she seeks relief. However, as the fraud
and intentional infliction of emotional distress claims have been dismissed by the Court,
Plaintiff proceeds on a breach of contract theory. Although Ms. Meeko was proceeding *pro
se* after her initial counsel withdrew, she is now represented by counsel.  Thus, Plaintiff's
filings in opposition to Defendant's Summary Judgment Motion were filed by Plaintiff's
counsel, and as Defendant asserts, Plaintiff's filings are not entitled to the liberal
interpretation afforded to *pro se* parties. (Doc. 25, p. 2).

District Pennsylvania District Court on July 29, 2011.  (*Id.*). Plaintiff and Elexco Land Services, Inc.,  executed an oil- and-gas lease dated April 26, 2008, with an Addendum which provided, in part, that Plaintiff had the right to approve well locations on her property. In May 2009, Elexco assigned its lease with Plaintiff to Defendant. Plaintiff alleged in her Complaint that an agent of Defendant  fraudulently obtained her permission to locate a well on an area of her property which caused her injury.  Plaintiff sought to assert causes of action for fraud and intentional infliction of emotional distress,  as well as to collect punitive damages and void the entire oil- and-gas lease.  (Doc. 4, pp. 1-2).  Exhibit A to Plaintiff 's Complaint is a copy of the Deed showing Plaintiff's ownership of the property in question and Exhibit B is a copy of the oil- and-gas lease dated April 26, 2008, which Plaintiff and Defendant executed. (Doc. 1, Tab A).

In response to Plaintiff's Complaint, Defendant filed a Motion to Dismiss Plaintiff's claims on August 5, 2011, arguing that the crux of the Plaintiff's action stemmed from an alleged breach of contract and requesting the Court to dismiss Plaintiff's fraud and IIED claims. (Doc. 4). The Court issued an Order on September 28, 2011, granting Defendant s Motion to Dismiss and dismissed Plaintiff's fraud and IIED  claims against Defendant SEPCO, and dismissed Plaintiff's requests for punitive damages and to void the oil- and-gas lease.

Thus, the Court allowed Plaintiff's breach of contract claim to proceed. Defendant filed an Answer to Plaintiff's Complaint on October 26, 2011.  (Doc. 13).   After discovery, Defendant filed a Motion  for Summary Judgment on April 30, 2012. (**Doc. 16**).  In support of its Motion for Summary Judgment, Defendant has submitted a Brief as well as a 19-

paragraph Statement of Material Facts ("SMF"), with exhibits, Tabs A-F. (Docs. 17 & 18).

Defendant's exhibits   include the parties' contract, copies of the January 14, 2010 letter from

Defendant to Plaintiff, a sworn Declaration of the Defendant's authorized representative, as

well as a map detailing the location of the  proposed drilling on Ms. Meeko's property.  (Doc.

18-1, pp. 1-28).

Plaintiff obtained new counsel and on June 5, 2012, submitted her Counter

Statement of Material Facts with her 8-sentence Affidavit attached, as well as her opposition

brief.  (Docs. 23, 23-1 & 24).  On June 13, 2012, Defendant filed a reply brief with an

attached unpublished opinion.  (Doc. 25).   Thus, Defendant's Motion  for Summary

Judgment is ripe for disposition.[2]

## II. Factual Background.

The relevant factual background information of the case is discussed below. Plaintiff

Lori Meeko, a property owner in Bradford County, Pennsylvania, executed a standard, three-

page oil-and-gas lease agreement, with a one-page Addendum, on April 26, 2008, with

Elexco Land Services, Inc. ("Elexco"), of Olean, New York.  (Doc. 18, p. 1).  The lease

agreement enables Elexco or its assignee to explore and develop oil-and-gas wells on Ms.

Meeko's 67-acre property in Bradford County, Pennsylvania over a five-year term which

commenced on April 26, 2008.  (Doc. 18-1, p. 2).[3]  The contract is signed in the appropriate

---

[2]On May 1, 2012, the Court referred Defendant's Summary Judgment to the undersigned for a Report and Recommendation.

[3]In May 2009, Elexco assigned the Meeko lease to Defendant SEPCO, which was fully permissible under the terms of the lease agreement.  (Doc. 18-1, p. 8).

space by Ms. Meeko and notarized by the notary public.  (Doc. 18-1, p. 4).

The contract between the parties is central to the resolution of the case, and thus merits substantial discussion. Key provisions of the contract provide that, in exchange for providing Elexco or its assignee use of her property for drilling purposes, Ms. Meeko would be entitled to collect royalty payments in the amount of one-eighth (1/8) of the sales proceeds actually received by Lessee (now SEPCO) from the sale of such oil or gas production, less the same percentage share of post-production costs.  (Doc. 18-1, p. 2).  The contract also provides that no payments are necessary to maintain the lease in full force and effect during the five-year term.  (*Id.*).  The terms of the contract give the Lessee the right of first refusal, and stipulate that Ms. Meeko agrees to notify Elexco immediately of any other offers, by other firms, to lease the oil and gas on the property.  (Doc. 18-1, p. 4). In the event of breach or default by Defendant Lessee, the Lessor also agrees not to initiate litigation for at least 90 days after providing full written notice of the breach or default to Lessee, thus giving Lessee appropriate time to cure the breach or default.  (*Id.*).  Even in the event that litigation ensues and there is a final judicial determination that a breach had occurred, the lease shall not be forfeited or cancelled unless Lessee fails to correct said breach within a reasonable time frame.  (*Id.*).

The oil-and-gas lease contract Elexco executed with Plaintiff (Doc. 18-1, p. 2) addresses the physical grant of the leased premises, term of lease, royalty payments, operations which can be conducted on the leased premises, ownership changes, breach or default, warranty of title, and right of refusal, among other key provisions.  (Doc. 18-1, p. 4).

4

We also note that, in the Addendum to the lease agreement, Plaintiff and Elexco agreed that

Ms. Meeko would reserve the right "to approve the location of all well sites, access roads,

pipelines, and related appliances constructed or installed on the leased premises." (Doc. 18-

1, p. 5). Such approval by Plaintiff, however, "shall not be unreasonably withheld and shall

be granted in a timely manner." *(Id.).* As noted, in May 2009, Elexco assigned the Meeko

lease to Defendant SEPCO.[4]   (Doc. 18-1, p. 8).

## III. Material Facts.

### 1. *Plaintiff's Facts*

We first address Plaintiff's version of the events which occurred during the month of

January 2011, the time-period which gave rise to this case and the instant Motion for

Summary Judgment. (Doc. 18, p. 2). Plaintiff has filed an opposition brief and her eight-

sentence Affidavit, which we address separately below. We stress, however, that the crux of

Plaintiff's opposition to Defendant's Motion for Summary Judgment relies almost entirely upon

the allegations set forth in her Complaint, as well as in her "Counter Statement of Material

Facts" filed in response to Defendant's SMF. (Doc. 23). As discussed below, we agree with

Defendant (Doc. 25, p. 2) that Plaintiff's "Counter Statement of Material Facts," which was

filed by her counsel, is in clear violation of Local Rule 56.1, M.D. Pa., since it does not

respond paragraph-by-paragraph to Defendant's SMF. Also, Plaintiff cannot simply rely upon

---

[4]If there is an effective assignment, "the assignee stands in the shoes of the assignor
and assumes all of his rights." *Smith v. Cumberland Group, Ltd.,* 455 Pa.Super. 276, 687 A.
2d 1167, 1172 (Pa.Super. 1997). We do not find any dispute that the assignment of Elexco
to Defendant was an effective assignment.

her allegations of her Complaint to support her "Counter Statement of Material Facts," as she does in part.

Though the oil-and-gas lease contract Elexco executed with Plaintiff was dated April 26, 2008, no disputes over the contract emerged until, at the earliest, January 2011.  The dispute at issue here, and alleged breach of contract which gave rise to this case, began on or around January 14, 2011. On or around that date, Defendant  SEPCO's senior staff landman, Sam Sheets, sent Plaintiff a letter detailing SEPCO's plan to install a well pad on Plaintiff's property, presumably to start drilling for oil or gas on her property as permitted under the terms of the contract agreed upon between the parties.  (Doc. 18-1, p. 10).  Plaintiff alleges that, although she signed both the original contract and the letter authorizing drilling a well pad at a specified location, she was somehow unaware of what she was signing, and that Defendant SEPCO misrepresented the terms of the letter by assuring her that the letter asked for her permission "solely for conducting a wetlands analysis." (Doc. 24, p. 4).  In essence, Plaintiff alleges that Defendant SEPCO has breached its contract with her by seeking to drill a well site on a portion of Plaintiff's 67-acre property for which Plaintiff has withheld permission, namely, a 30-acre parcel of her property over which her late husband's ashes were allegedly scattered.[5]

---

[5]We note that Plaintiff has not submitted any evidence to show that  her late husband's ashes were scattered over the 30-acre parcel of her property at issue herein. In fact, we find no independent verification for this assertion and it appears nowhere in Plaintiff's Affidavit.  (Doc. 23-1).

Plaintiff's unsubstantiated allegations, detailed in her Complaint and in her Counter Statement of Material Facts, maintain that the Plaintiff was first contacted by Frank McSloy, an independent contractor working on behalf of the Defendant, as early as January 2, 2011, at which time she allegedly expressed her objection to the designated well site on the basis that her late husband's ashes were scattered over this portion of her property.  (Doc. 23, p. 3).  On or about January 19, 2011, Plaintiff received a two-page letter (discussed in detail below) from Defendant SEPCO's authorized representative, Sam Sheets, stating that SEPCO intended to place a well pad on her property in an area shown on an enclosed map.[6]  (*Id*.).    Plaintiff then allegedly contacted Mr. McSloy to tell him that there was, in fact, no map enclosed with the letter.  (*Id*.).  Mr. McSloy then agreed to meet Plaintiff on her property on January 22, 2011, to give Plaintiff a copy of the map and to further discuss the proposed well pad placement on her property.  *(Id.)*.

In her Counter Statement of Material Facts, Plaintiff states that on January 22, 2011, she "vehemently told" McSloy that she would not agree to the well pad site location between her home and the pond.  (Doc. 23, p. 4).  Also, on January 22, 2011, Plaintiff states that she was presented a document by McSloy, which she says she could not read because she did not have her eyeglasses, and that  McSloy apparently explained the document to her and told her it was "solely for conducting a wetlands analysis." (*Id.)*.  Even though Plaintiff contends she

---

[6]Because of a typographical error, the letter sent by Defendant SEPCO to Plaintiff on January 14, 2011 was erroneously dated January 14, 2010. There is no dispute between the parties that the letter was transmitted on or around January 14, 2011, and was received by Ms. Meeko on or around January 18, 2011.

could not read the document and even though Plaintiff did not request the opportunity to

obtain her eyeglasses, she signed the document, thus indicating her approval of the well pad

site on the disputed 30-acre parcel between her home and the pond where her deceased

husband's ashes were allegedly scattered. On February 3, 2011, Plaintiff called Defendant's

representative, Sam Sheets, and left a message "regarding the well pad location" and asked

Sheets to call her,  but made no mention of any objection to its location.  (*Id.* & Doc. 23-1, p.

1).   Plaintiff states that on February 4, 2011, she again call Sheets and left him a message to

call her.  (*Id.*, p. 5 & 23-1, p. 2).  Plaintiff states that Sheets never returned her calls. (*Id.*).  The

next contact Plaintiff had with Defendant or its representatives after February 4, 2011, was the

filing of this lawsuit on July 22, 2011.   There is no indication that Plaintiff made any attempt to

fulfill the contract provision that Plaintiff notify Defendant, in writing, of the alleged breach or

allow Defendant the opportunity to fix the breach, if any occurred, prior to filing her

Complaint.  (Doc. 23-1, pp. 1-2).   Also, there is no dispute that the lease agreement

specifically required Plaintiff to give Defendant written notice of any alleged breach or default

before she filed suit.  (Doc. 18-1, p. 4).

As mentioned, Plaintiff submitted as her sole evidence in opposition to Defendant's

Summary Judgment Motion, her eight-sentence sworn Affidavit, the contents of which we

afford evidentiary weight.[7] (Doc. 23-1, pp. 1-2). Plaintiff, in her Affidavit, avers  that she had

---

[7]We note that Plaintiff's Affidavit (Doc. 23-1) is only eight sentences long, and does
not, in substance, cover the time period most critical to the Complaint. Substantial pieces of
highly relevant information are conspicuously absent from Plaintiff's Affidavit, namely, any
mention of contact with either of the SEPCO representatives named in the letter, Mr.
McSloy and Mr. Sheets, during the critical period between January 19, 2011 and February 2,

"no objection to the placement of the well pad anywhere on the 67 acre parcel except for those thirty (30) acres" between her home and the meadow and pond at issue. (*Id.*). Plaintiff further avers that, on February 3, 2011, she "called Defendant's representative, Sam Sheets, and left him a message regarding the well pad location and asked him to call me." (*Id.*). Plaintiff further avers that after signing the document, she "contacted Defendant on numerous occasions between January 22, 2011 and February 2, 2011 and thereafter expressing my disagreement with the subject placement of the well pad." (*Id.*).

Plaintiff Meeko's Affidavit, however, is telling not in what it contains but in what it omits. Substantial and potentially relevant pieces of information, present in the allegations of her Complaint, are conspicuously absent from Plaintiff's Affidavit. These missing facts include mention of specific contact by Plaintiff with either of the SEPCO representatives named in the letter, Mr. McSloy and Mr. Sheets, during the critical period between January 19, 2011 and February 2, 2011, during which Plaintiff was required to contact these named SEPCO representatives if she had any objection to the proposed well site. (Doc. 23-1, pp. 1-2). As stated, Plaintiff avers that she "contacted Defendant on numerous occasions between January 22, 2011 and February 2, 2011," to express her disagreement with the location of the well

---

2011, during which Plaintiff  was required to contact these specific SEPCO representatives if she had any objection to the proposed well site. Other key factual assertions referenced in the Plaintiff's Counter Statement of Material Facts (*i.e.* failing to include a map in the original letter, allegedly speaking with Mr. McSloy on January 2, 2011) are also notably absent in Plaintiff's Affidavit.

pad.[8]  (*Id.*).   Other key factual assertions referenced in the Plaintiff's Counter-statement of

Material Facts (*i.e.* Defendant SEPCO's alleged failure to include a map in the original letter,

and allegedly speaking with Mr. McSloy on January 2, 2011) are also notably absent in

Plaintiff's Affidavit.  (*Id.*). Plaintiff does not deny meeting with Mr. McSloy on January 22,

2011, nor does she mention in her Affidavit expressing any objection about the well pad

location to Mr. McSloy during their face-to-face meeting on January 22, 2011, when the

parties agree Plaintiff and her boyfriend met with Mr. McSloy on her property in Bradford

County.  (Doc. 18-1, p. 20).   Further, as Defendant points out, if Plaintiff had difficulty reading

the document McSloy gave to her to sign during their January 22, 2011 meeting, Plaintiff

could have simply asked her boyfriend to read it to her. (Doc. 25, p. 4).

    2.  *Defendant's Facts*

    Defendant SEPCO's version of events is drawn primarily from its undisputed evidence,

namely, the  the Declarations of Mr. Sheets and Mr. McSloy, the contract and its Addendum

signed by Ms. Meeko, and the letter  sent to Ms. Meeko on or about January 14, 2011.

SEPCO, seeking to initiate drilling  operations at its contracted site on Ms. Meeko's

property, endeavored to secure approval of its preferred well pad site by sending a letter to

Ms. Meeko on January 14, 2011.  (Doc. 18-1, p. 10).

---

[8]Mr. McSloy, in his sworn Declaration, acknowledges having additional telephone conversations with Plaintiff during the period of January 22, 2011 and the end of January 2011, but he denies receiving any objection from the Plaintiff as to the location of the well pad site.  (Doc. 18-1, pp. 19-21).

We now proceed to address the terms of the actual January 14, 2011 letter SEPCO

sent to Plaintiff, mistakenly dated "January 14, 2010," which is the primary source of the

present dispute. The letter, and an enclosed aerial photo of the proposed well pad site, were

received by Plaintiff on or about January 18, 2011, and document the location of the

proposed pad on the Plaintiff's property. (Doc. 18-1, pp. 26-28). We address the substance

of Mr. Sheets' letter (*Id.*) in detail below. The first sentence of the letter reads:

> "SEPCO has selected a potential site on your property for the drilling of natural gas wells under the terms of the respective paid-up oil and gas leases that you and your husband executed on April 26, 2008, and on January 15, 2008, in favor of Elexco Land Services, Inc."

Mr. Sheets also noted:

> Should you have any objection to the location of the identified well site, you may propose to move the boundaries or designate an alternative site within a reasonable distance of the selected site. In this case, we ask you to notify us as soon as possible, **but not later than five (5) days from this notice**, in order that we may review your changes or arrange an inspection of such alternative well site.

(Doc. 18-1, p. 26)(emphasis added).

> Mr. Sheets' letter to Ms. Meeko further stated:

> If we do not receive your written approval of the selected well site and road access by returning a signed copy of this letter within fourteen (14) days or receive written notice or phone call of proposed changes to the selected site within five (5) days of your receipt of this letter, SEPCO will assume that you have no objection to the selected well site, and will proceed with the application process and surveying work for a ESCGP-1 permit and individual well drilling permits from the PA DEP.

(Doc. 18-1, p. 27 & Doc. 18-1, pp. 13-14).

In his sworn Declaration (Doc. 18-1, pp. 19-21), Frank McSloy, an independent contractor working on SEPCO's behalf, avers that he spoke with Ms. Meeko by telephone on January 18, 2011, to confirm her receipt of the January 14, 2011 letter and to discuss other related matters.  (Doc. 18-1, p. 20).

Mr.  McSloy then met, in person, with Ms. Meeko and her boyfriend on January 22, 2011, at Plaintiff's house  explaining to her the true contents of the letter and asking her to counter-sign the letter in his  presence.  (*Id.*).  According to Mr. McSloy's sworn Declaration, Ms. Meeko did not express a need to use her eyeglasses to read the letter, an inability to understand the terms of  the letter, or request clarification of the letter's meaning from her boyfriend or a lawyer.  (Doc 18-1, p. 20).

After Ms. Meeko and her boyfriend initially asked general questions about well site construction, Mr. McSloy showed Ms. Meeko other well pad sites in the area to demonstrate what work would be completed on her property.  (*Id.*).  Ms. Meeko, after speaking with Mr. McSloy on January 22, 2011,  counter-signed the January 14, 2011 letter, ostensibly signaling her approval for SEPCO to  begin drilling a well pad site on her property. (Doc. 18-1, p. 21).  In his Declaration, Mr. McSloy also avers that he had additional telephone conversations with Ms. Meeko in the last week of January, 2011, but that she expressed no objections to the proposal laid out in Mr.  Sheets' January 14, 2011 letter, which Mr. McSloy had also orally explained to her.  (Doc. 18-1, p. 21).

**IV.  Motion for Summary Judgment  Standard.**

In the case of *Barthalow v. David H. Martin Excavating, Inc.*, 2007 WL 2207897, * 1, n. 5, (M.D. Pa. 2007), this Court noted:

> The Middle District of Pennsylvania's Local Rule of Court 56.1 provides that a summary judgment motion must include a separate concise statement of material facts. M.D. Pa. Local R. 56.1. The rule also requires that an opposition to a summary judgment motion must similarly include a statement that "responds to the numbered paragraphs set forth in [the moving party's concise statement of material facts], as to which it is contended that there exists a genuine issue to be tried." *Id.* Moreover, "[a]ll material facts set forth in [the moving party's statement] will be deemed to be admitted unless controverted by the [opposing party's statement]. " *Id.*

The Third Circuit has specifically held that "when opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner,* 247 F. App'x 353, 354 (3d Cir. 2007).

The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56©.  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd*

*mem.* 725 F.2d 667 (3d Cir. 1983).   Upon such a showing, the burden shifts to the nonmoving

party.  *Id*.  The nonmoving party is required to go beyond the pleadings and by affidavits or by

"depositions, answers to interrogatories and admissions on file" designate "specific facts showing

that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  In the face of the defendant's properly

supported motion for summary judgment, the plaintiff cannot

rest on her allegations without "any significant probative evidence tending to support the

complaint."  *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290.

     In determining whether an issue of material fact exists, the court must consider the

evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric*

*Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's

allegations as true and resolve any conflicts in his favor.  *Id*., *quoting Gans v. Mundy,* 762 F.2d

338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co*.,

534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).  By its very terms, this

standard provides that the mere existence of *some* alleged factual dispute between the parties will

not defeat an otherwise properly supported Motion

for Summary Judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A fact is material only if proof of its

existence or nonexistence might affect the outcome of the suit under the applicable, substantive

law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

**V.  Discussion.**

 We first address Pennsylvania law essential to the Plaintiff's breach of contract claim, and then proceed to evaluate Defendant's Motion for Summary Judgment. As this is a case based upon diversity jurisdiction of this Court, 28 U.S.C. § 1332, we apply Pennsylvania law.  *See Moore v. Kulicke & Soffa Industries, Inc.*, 318 F.3d 561, 563 (3d Cir. 2003).

Essential to our consideration of the instant case are the written terms of the contract between the parties, the Addendum to the contract, and the January 14, 2011 letter from Mr. Sheets subsequently signed by Ms. Meeko authorizing the drilling on her land.  A longstanding and fundamental principle of contract law, essential to ensure good-faith execution and fair dealing between the parties to any contract, is that the written word of the contract must govern. *Moravian Associates, L.P. v. Henderson Corp.*, 2008 WL 3562468, *9 (E.D. Pa. 8-12-08).  In *Moravian Associates*, the Court addressed the significance which must be attached to the written word:

> [c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties, as embodied in the written agreement. Courts assume that a contract's language is chosen carefully and that the parties are mindful of the meaning of the language used. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

*Id.*

 In *McCloskey v. Novastar Mortg., Inc.*, 2007 WL 2407103, *5 (E.D. Pa. 8-21-07), the Court stated that an enforceable contract exists under Pennsylvania law if:

> (1) the parties have manifested an intent to be bound by the agreement's terms; (2) the terms are sufficiently definite; and (3) there was consideration.

> *In re Estate of Hall,* 731 A.2d 617, 621 (Pa.Super.Ct.1999). *See also*
> *Mazzella v. Koken,* 559 Pa. 216, 739 A.2d 531, 536-37 (Pa.1999) (noting
> that in order to enforce an agreement " 'the minds of the parties should
> meet upon all the terms, as well as the subject-matter, of the [agreement].' "
> (citation omitted)).

Considering the undisputed material facts of the instant case, Plaintiff signed a fully

enforceable contract with Elexco on April 26, 2008, whose rights were subsequently and properly

assigned to Defendant SEPCO. We must, therefore, give effect to the written agreement as it was

established between the parties, and thus assume that the language of the contract was chosen

carefully and purposefully. *Moravian Associates, L.P. v. Henderson Corp.*, 2008 WL 3562468, *9.

If Plaintiff Meeko intended to exclude a significant portion of her property from drilling use, on

the basis that it carried a significant sentimental value to her, such a provision would have

undoubtedly affected whether Elexco chose to execute an agreement with her  and would have

had to be fully referenced and delineated therein.

We conclude that the documents Ms. Meeko signed are clear and unequivocal.  The

meaning of the contract, and related legal agreement set forth in the January 14, 2011 Sheets'

letter, can be clearly and unambiguously discerned from the contract and Ms. Meeko's approval

of the letter, signed on or about January 22, 2011.  (Doc. 18-1, p. 27). The instant case appears to

simply present an example of a Plaintiff who, after duly signing a contract and its related legal

documentation necessary to further Defendant SEPCO's objectives, simply wished to reconsider

her decision. Plaintiff signed a fully enforceable contract on April 26, 2008, which imposed no

substantive limitations on SEPCO in its subsequent use of her property (except for limitations on

drilling near buildings and near water supply sources). The contract made no mention whatsoever

that 30 of the 67 acres on Plaintiff's property, nearly 50% of the property, would somehow be off-limits to SEPCO for drilling a well pad.  (Doc. 18-1, pp. 2-5).   Although Plaintiff did preserve the right within the Addendum to the contract to approve the location of any well pad site location, the terms of the contract also provide that such approval must not be unreasonably withheld and must be granted in a timely manner.  (Doc. 18-1, p. 5). Plaintiff thus had to approve SEPCO's site, or suggest a reasonable alternative site, within a reasonable time frame.  *(Id.)*. Such a provision would not, under any reasonable interpretation of the contract, allow Plaintiff to exclude nearly 50% of her property from consideration for drilling by SEPCO.  *(Id.)*.

Defendant SEPCO moves for summary judgment on the basis that, even if Ms. Meeko's evidence is considered in the light most favorable to her as the non-moving party, there is no genuine dispute of material facts which would present an issue needing resolution at trial.  We agree with Plaintiff that there are some disputes of fact still outstanding, notably over the dates and timing of the documents of Defendant SEPCO's representatives, as well as whether Ms. Meeko expressed any objection to the placement of the well pad site during her conversations with Mr. McSloy.  (Doc. 23-1, p. 2).  However, disputes of incidental, non-material facts do not automatically preclude entry of summary judgment on an otherwise properly filed Motion for Summary Judgment.  *Anderson,* 477 U.S. at 247.

We first consider the filings made in relation to Defendant's Motion for Summary Judgment.  Defendant SEPCO properly filed its Statement of Material Facts (SMF) (Doc. 18), as required by Local Rule 56.1, M.D. Pa, in addition to its Motion for Summary Judgment.  Also, Defendant SEPCO attached numerous exhibits to its SMF which are cited for support of each

paragraph, consisting of the parties' initial contract, the Addendum to the contract, the

assignment of the oil and gas leases from Elexco to Defendant SEPCO, the January 14, 2011 letter

from Sam Sheets to Ms. Meeko, the Declaration of Sam Sheets, the Declaration of Frank McSloy,

the January 14, 2011 letter signed by Ms. Meeko, and a map establishing the location, in red, of

the proposed well pad site on Ms. Meeko's property.  (Doc. 18-1, pp. 1-28).  Thus, Defendant

SEPCO has properly filed its SMF in support of its Summary Judgment Motion (Doc. 18), as

required by Local Rule 56.1 of M.D. Pa., and its facts, ¶'s 1-19, are all properly supported by its

evidence.  (Doc. 18, pp. 1-4).  As mentioned, Plaintiff failed to file a paragraph-by-paragraph

response to Defendant's SMF as she was obliged to do and as her counsel should have been

aware had to be filed.[9]  Furthermore, Plaintiff did not submit any evidence, apart from Ms.

Meeko's 8-sentence Affidavit, to contest Defendant SEPCO's SMF and its evidence.  Plaintiff has

had ample time to file her proper response to Defendant's SMF and has failed to do so.

Pursuant to this Court's Local Rules,  Plaintiff Meeko must respond paragraph by paragraph

to SEPCO's statement of material facts and any statement she denied had to be supported by

citation to evidence.  *See* M.D. Pa. LR 56.1.  Instead, even though represented by counsel, Ms.

Meeko only filed a "Counter Statement of Material Facts" which did not directly contest

Defendant SEPCO's SMF or rebut its version of the facts to show there is a genuine dispute of

material fact requiring resolution at trial.  (Doc. 23).  Instead, Plaintiff's opposition brief relies

almost entirely on citations to her Complaint. At no point does Plaintiff specifically contradict any

---

[9]As noted Plaintiff is now represented by counsel and her counsel filed her opposition
documents to Defendant's Summary Judgment Motion.  Thus, Plaintiff is deemed to be
aware of the  pertinent Local Rules of this Court.

of Defendant's factual contentions with admissible evidence, with the exception of Plaintiff's brief, limited-scope Affidavit, which does not specifically contradict any material fact. (Doc. 23-1, pp. 1-2). Pursuant to LR 56.1, the Court may thus treat Defendant SEPCO's SMF as uncontested and its facts as admitted. *See Cyrus v. Laino,* Civ. No. 08-1085, 2009 U.S. Dist. LEXIS 127027 (M.D. Pa. April 17, 2009); *Cyrus v. Freynik,* Civil No. 08-2278, M.D. Pa.; *Michtavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers, 2008 WL 3540526 (M.D. Pa.); Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.), affirmed 2010 WL 763550 (3d Cir.)(court found that since Plaintiff inmate in civil rights action did not properly respond to prison staff Defendants' statement of facts as required by L.R. 56.1, M.D. Pa., Defendants' statement of facts were undisputed).

Thus, we will accept the material facts as articulated by Defendant SEPCO in its SMF, and in Plaintiff's Affidavit, as the controlling account. The material facts, not in dispute, are summarized below.

1. On April 26, 2008, Plaintiff and Elexco signed an oil-and-gas lease affording Elexco or its assignee (present Defendant SEPCO) the rights to drill on Ms. Meeko's property. (Doc. 18, p. 1).

2. In the Addendum to the lease, Ms. Meeko and Elexco agreed she would reserve the right "to approve the location of all well sites, access roads, pipelines, and related appliances constructed or installed on the leased premises." *(Id.)*.

3. In January 2011, SEPCO's senior staff landman, Sam Sheets, sent Ms. Meeko a letter requesting her approval of the proposed well pad site. (Doc. 18, p. 2).

4. The letter informed Ms. Meeko that, if she had any reason to contact SEPCO about the proposed well pad site, she should contact Mr. Sheets or Mr. McSloy, an authorized

representative of SEPCO.  (*Id.*).

5.  Mr. McSloy, authorized representative of SEPCO, spoke with Ms. Meeko on or around January 18, 2011, to confirm receipt of the letter, and then met with her in person on January 22, 2011, at which time he avers explaining to her the contents of the January 14, 2011 letter.  (Doc. 18, p. 3).

6. At no point did Ms. Meeko indicate any need for eyeglasses or difficulty understanding the document with which she had been presented.  (Doc. 18, p. 3).

7. On January 22, 2011, Ms. Meeko countersigned the January 14, 2011 letter in Mr. McSloy's presence, signaling her legal approval of the well pad site proposed in the letter.  (*Id.*).

8. Between that date and the end of the month of January  2011, Mr. McSloy communicated with Ms. Meeko several more times.  There is a dispute over whether Ms. Meeko expressed an objection to the well pad site *after* signing the letter. (*Id.*).

9. The first time Ms. Meeko made any contact with Mr. Sheets after receipt of the January 14, 2011 letter, was on or about February 3, 2011, when she left him a phone message stating that she had "well site questions."  (Doc. 18, p. 4).

Based on the facts not in dispute, we conclude that the Defendant has met its burden of establishing that there is no genuine dispute of material facts, and also that Plaintiff has failed to rebut Defendant's undisputed evidence to establish a genuine issue of disputed material fact. (Doc. 18, pp. 1-4).  There is no dispute that the controlling legal documents in the case, including the contract and its Addendum, as well as Mr. Sheets' letter to the Plaintiff sent on or around the 14th of January, 2011, were duly signed by the Plaintiff, and that their explicit, written language,

not Plaintiff's own understanding of these documents, must govern.  *Moravian Associates, L.P. v. Henderson Corp.*, 2008 WL 3562468, *9.  Plaintiff had every opportunity to seek assistance in understanding these documents, and assumes legal responsibility for adhering to the responsibilities delineated in the documents. Despite Plaintiff's assertions to the contrary, there is no evidence at the summary judgment stage that the January 14, 2011 letter's contents were in any way misrepresented to her; the clear, straight-forward language of the letter, which unequivocally states her options if she did not approve of the well pad site placement, belies her assertions that the letter she signed only authorized conducting a "wetlands analysis."  (Doc. 18-1, p. 10).  Furthermore, we completely agree with Defendant that  none of the Plaintiff's limited evidence suffices to establish a genuine dispute of material fact as to how the contract and its subsequent authorization letter were represented to her.

The Plaintiff, if she truly did have difficulty reading the January 14, 2011 document presented to her on January 22, 2011, could have asked Frank McSloy to read the document, sought the assistance of her boyfriend, who was also present at the time of her meeting with SEPCO representative Frank McSloy, could have asked to get her glasses, or could have enlisted the assistance of counsel knowing that she had already entered into a significant financial and contractual arrangement with SEPCO and that the document she was signing might be closely related to those obligations.  Plaintiff, though, made no mention to any of the parties present that she needed assistance either reading or understanding the terms of the document.  Thus, we find that Plaintiff's apparent attempt to reconsider her contract and agreement with SEPCO to be unpersuasive, and, more importantly, legally insufficient to establish a genuine dispute of material

fact which would preclude the entry of summary judgment in Defendant's favor in this case.

**VI. Recommendation.**

Based on the foregoing, it is respectfully recommended that Defendant SEPCO's Motion

for Summary Judgment (**Doc. 16**)  be granted with respect to all remaining claims in Plaintiff's

Complaint, and that Judgment be entered in favor of Defendant SEPCO and against Plaintiff

Meeko.


           s/ Thomas M. Blewitt_____
          THOMAS M. BLEWITT
          United States Magistrate Judge


**Dated: August 10, 2012**

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORI J. MEEKO, | : | CIVIL ACTION NO. **3:CV-11-1409** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| SOUTHWESTERN ENERGY | : | |
| PRODUCTION COMPANY, | : | |
| | : | |
| | : | |
| Defendant | : | |

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 10, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all

parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections may constitute a waiver of any appellate rights.


                                        s/ Thomas M. Blewitt
_____            THOMAS M. BLEWITT
                                        United States Magistrate Judge


Dated: August 10, 2012