**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LORI J. MEEKO, | |
| Plaintiff, | CIVIL ACTION NO. 3:CV-11-1409 |
| v. | (JUDGE CAPUTO) |
| SOUTHWESTERN ENERGY PRODUCTION COMPANY, | (MAGISTRATE JUDGE BLEWITT) |
| Defendant. | |

## **MEMORANDUM**

Presently before the Court is Magistrate Judge Blewitt's Report and Recommendation (Doc. 26) to Defendant Southwestern Energy Production Company's ("SEPCO") Motion for Summary Judgment. (Doc. 16.) Magistrate Judge Blewitt recommends that the motion for summary judgment be granted. Plaintiff, Lori J. Meeko ("Ms. Meeko"), filed timely objections to the Report and Recommendation. Ms. Meeko argues that "there is a multitude of disputed facts that require a jury trial on the breach of contract claim." Because SEPCO has satisfied its burden of demonstrating the lack of a genuine issue of fact and that it is entitled to judgment as a matter of law, and Ms. Meeko has not come forward with specific facts showing a genuine issue for trial, SEPCO's motion for summary judgment will be granted.

### **I. Background**

As will be discussed in detail below, SEPCO complied with Middle District of Pennsylvania Local Rule 56.1 in submitting a statement of material facts with citations to the record in support of its motion for summary judgment. Rather than respond paragraph-by-paragraph to SEPCO's statement of material facts, Ms. Meeko filed a "counter-statement of material facts." Because the counter-statement does not respond paragraph-by-paragraph to SEPCO's statement, I will set forth the relevant factual background first, and

then I will recite the material facts as stated by each party.

## A. The Lease

On or about April 26, 2008, Ms. Meeko entered into an oil and gas lease (the "Lease") with Elexco Land Services, Inc. ("Elexco"). (Doc. 1, Tab A, Ex. B., "*Lease*.") The Lease grants Elexco the right to explore and develop oil and gas wells on Ms. Meeko's sixty-seven (67) acre property in Bradford County, Pennsylvania during a five-year period. (*Id*.) The Lease consists of fifteen (15) paragraphs, as well as a nine (9) paragraph Addendum. (*Id*.) The Lease is signed by Ms. Meeko and notarized by a notary public. (*Id*.)

In exchange for Elexco's use of her property for drilling purposes, Ms. Meeko is entitled to one-eighth (1/8) of the sales proceeds actually received from the sale of such oil or gas production, less the same percentage share of post-production costs. (*Id*.) The agreement further provides that no payments are necessary to maintain the Lease in full force and effect during the five-year term. (*Id*.)

The Lease also addresses ownership changes under the agreement, and establishes that either party may assign, devise or otherwise transfer the party's rights and obligations under the Lease. (*Id*.)

The Addendum to the Lease provides that "Lessor reserves the right to approve the location of all well sites, access roads, pipelines and related appliances constructed or installed on the leased premises." (*Id*. at Addendum.) Such approval, however, "shall not be unreasonably withheld and shall be granted in a timely manner." (*Id*.)

## B. Material Facts

### 1. Ms. Meeko's Material Facts

In opposing SEPCO's motion for summary judgment, Ms. Meeko filed a twenty-seven (27) paragraph "Counter-Statement of Material Facts." (Doc. 23*, Pl.'s Counter-Statement Material Facts*, "*Pl.'s CSMF*".) The evidence cited by Ms. Meeko in her counter-statement

consists of the allegations in her Complaint and her eight (8) paragraph Affidavit.

According to Ms. Meeko, she is the owner of the subject property in Bradford County, Pennsylvania. (*Compl.*, ¶ 3.) She originally owned the property with her late husband. (*Meeko Aff.*, ¶ 1.) When her husband passed away, Ms. Meeko scattered his ashes in the meadow between her home and a pond on the premises. (*Compl.*, ¶ 8.) The meadow comprises an area of approximately thirty (30) acres. (*Meeko Aff.*, ¶ 2.)

Ms. Meeko entered into the Lease on or about April 26, 2008, and the Lease was assigned to SEPCO in May 2009. (*Compl.*, ¶¶ 9, 13.) On or about January 2, 2011, Ms. Meeko received a telephone call from Frank McSloy, SEPCO's authorized agent. (*Id.* at ¶ 15.) At that time, Mr. McSloy indicated that SEPCO was interested in putting a well on her property. (*Id.* at ¶ 16.) During that conversation, Ms. Meeko informed Mr. McSloy that she would not agree to having a well pad placed in the meadow. (*Id.* at ¶ 17.)

A few weeks later, on or about January 19, 2011, Ms. Meeko received a two page letter from Sam Sheets, another SEPCO authorized agent. (*Id.* at ¶ 23.) The letter stated that SEPCO intended to place a well pad on the leased premises as identified on a map included with the letter. (*Id.* at ¶ 25.) As no map was enclosed with the letter, Ms. Meeko contacted Mr. McSloy. (*Id.* at ¶ 26.) Mr. McSloy agreed to meet Ms. Meeko at her property on January 22, 2011 to provide a copy of the map and to review the proposed location of the well pad. (*Id.* at ¶ 27.)

On January 22, 2011, Ms. Meeko met with Mr. McSloy. (*Id.* at ¶ 28.) At that time, Ms. Meeko reviewed the map with the well pad description showing the proposed location to be in the meadow between her home and the pond. (*Id.* at ¶ 31.) Mr. McSloy then asked Ms. Meeko to countersign the letter, but she refused. (*Id.* at ¶¶ 33-34.) She also informed Mr. McSloy that she wanted her lawyer to review the letter. (*Id.* at ¶ 36.)

Prior to leaving her property, Mr. McSloy requested her to sign another document,

3

which Mr. McSloy represented was solely a letter authorizing entry on her property for conducting a wetlands analysis. (*Id*. at ¶ 38.) Since she did not have her glasses, Ms. Meeko initially refused to countersign the letter. (*Id*. at ¶ 39.) But, after Mr. McSloy reassured her that the letter only addressed a wetlands analysis, Ms. Meeko relented and she countersigned the letter. (*Id*. at ¶¶ 40-41.) She subsequently learned that the letter authorized the well pad site in the meadow. (*Id*. at ¶ 43.)

Thereafter, Ms. Meeko "contacted Defendant on numerous occasions between January 22, 2011 and February 2, 2011 and thereafter expressing her disagreement with the subject placement of the well pad." (*Meeko Aff.*, ¶ 8.) Specifically, she "contacted Mr. McSloy on several occasions requesting a copy of the signed document, which Mr. McSloy did not provide for several days." (*Id*. at ¶ 5.) Additionally, on February 3, 2011 and February 4, 2011, Ms. Meeko called Mr. Sheets and left him messages asking him to return her calls to discuss the well pad location. (*Id*. at ¶¶ 4, 6.)

### 2. SEPCO's Material Facts

SEPCO's statement of facts is drawn primarily from the Affidavits of Mr. Sheets and Mr. McSloy. (Doc. 18, *Def.'s Statement Material Facts*, "*Def.'s SMF*.") SEPCO was assigned Elexco's rights and obligations to the leased premises in May 2009. (*Id*. at ¶ 4.) In January 2011, SEPCO's senior staff landman, Sam Sheets, sent Ms. Meeko a letter identifying the location for a proposed well pad. (*Id*. at ¶ 5.) The letter provides, in pertinent part, that:

> Should you have any objection to the location of the identified well site, you may propose to move the boundaries or designate an alternative site within a reasonable distance of the selected site. In this case, we ask you to notify us as soon as possible, but not later than five (5) days from this notice, in order that we may review your changes or arrange an inspection of such alternative well site. Any changes or alternative well site proposed must be in compliance with PA DEP regulations for the construction of a well site.

(*Id*. at Tab C.) Additionally, the letter states:

> We ask you to promptly indicate your written approval of the selected well site

> by signing a copy of this letter in the space provided below and returning the signed letter to SEPCO or our designated field representative. If we do not receive your written approval of the selected well site and road access by returning a signed copy of this letter within fourteen (14) days or receive your written notice or phone call of proposed changes to the selected site within five (5) days of your receipt of this letter, SEPCO will assume that you have no objection to the selected well site, and will proceed with the application process and surveying work for a ESCGP-1 permit and individual well drilling permits from the PA DEP.

(*Id.*) Lastly, the letter states that if Ms. Meeko had any "reason to contact SEPCO about the selected well site," she should write, call, or email Mr. Sheets, or she should call Mr. McSloy. (*Id.*)

On January 18, 2012, Mr. McSloy spoke with Ms. Meeko by telephone to confirm that she received Mr. Sheets' letter. (*Def.'s SMF*, ¶ 7.) On January 22, 2011, Mr. McSloy met in person with Ms. Meeko and her boyfriend. (*Id.* at ¶ 8.) Based on Ms. Meeko and her boyfriend's questions about well construction, Mr. McSloy took them for a drive to look at other well sites near her property. (*Id.* at ¶ 9.) Once they returned to Ms. Meeko's property, Mr. McSloy asked her to countersign the letter following an accurate explanation of its contents. (*Id.* at ¶¶ 10-11.) Ms. Meeko reviewed the letter, and she never suggested that she had difficulty reading it, that she needed her glasses, or that she wished to have it reviewed by a lawyer. (*Id.* at ¶¶ 12-13.) Ms. Meeko then countersigned the letter. Although Mr. McSloy spoke with Ms. Meeko a few times between January 22, 2011 and February 2, 2011, Ms. Meeko never objected to the location of the well pad identified in Mr. Sheets' letter. (*Id.* at ¶¶ 15, 17.)

Mr. Sheets was first contacted by Ms. Meeko about the letter on February 3, 2011. (*Id.* at ¶ 18.) Mr. Sheets states that she left a message regarding "well site questions," and that Ms. Meeko did not indicate any objections to the location of the well site. (*Id.* at ¶ 19.)

**B. Procedural History**

As a result of the foregoing events, Ms. Meeko filed the Complaint on July 22, 2011 against SEPCO in the Court of Common Pleas of Bradford County, Pennsylvania. (*Compl.*)

Ms. Meeko asserted claims for fraud, intentional infliction of emotional distress, and breach of contract. (*Id.*)

SEPCO timely removed the action to this Court on July 29, 2011. (Doc. 1.) Shortly thereafter, SEPCO filed a motion to dismiss the fraud and intentional infliction of emotional distress claims. (Doc. 4.) After the deadline to respond SEPCO's motion to dismiss passed, Ms. Meeko's counsel indicated to SEPCO that the motion was unopposed. (Doc. 9.) Thus, the claims for fraud and intentional infliction of emotional distress were dismissed. (Doc. 10.) Additionally, the demands for punitive damages and voiding of the Lease were dismissed. (*Id.*)

On April 30, 2012, SEPCO filed a motion, a statement of facts, and a brief in support seeking summary judgment on Ms. Meeko's breach of contract claim, the only claim remaining in this action. (Docs. 16-18.) The next day, on May 1, 2012, the motion was referred to Magistrate Judge Blewitt for preparation of a Report and Recommendation on SEPCO's request for summary judgment. On June 5, 2012, Ms. Meeko filed her brief in opposition to SEPCO's motion and a counter-statement of facts. (Docs. 23-24.)

**C.    The Report and Recommendation**

Magistrate Judge Blewitt issued his Report and Recommendation on August 10, 2012. (Doc. 26.) Magistrate Judge Blewitt recommends that SEPCO's motion be granted. In particular, Magistrate Judge Blewitt noted that the Lease and related documents make no mention that SEPCO was prevented from locating a drilling pad on thirty (30) of the sixty-seven (67) acres on the leased premises. And, even though Ms. Meeko retained the right to approve the location of any well pad site, no "reasonable interpretation of the contract [would] allow Plaintiff to exclude nearly 50% of her property from consideration for drilling by SEPCO." (*Id.*)

Additionally, although acknowledging that there are some disputes of fact

outstanding, Magistrate Judge Blewitt concluded that "there is no genuine dispute of material fact which would present an issue needing resolution at trial." Specifically, Magistrate Judge Blewitt found Ms. Meeko's filings to be in violation of Middle District of Pennsylvania Local Rule 56.1 because her counter-statement of material facts failed to respond paragraph-by-paragraph to SEPCO's statement of facts. Additionally, Magistrate Judge Blewitt noted that Ms. Meeko's summary judgment evidence consisted of only her eight (8) paragraph Affidavit because allegations in a complaint are not competent evidence to defeat a properly supported motion for summary judgment. Thus, Magistrate Judge Blewitt considered only "the material facts as articulated by Defendant SEPCO in its SMF, and in Plaintiff's Affidavit."

Upon consideration of those facts, Magistrate Judge Blewitt found that SEPCO established its burden of demonstrating that there is no genuine dispute of material fact in this case, and that Ms. Meeko failed to rebut SEPCO's undisputed evidence to establish a genuine issue for trial. Specifically, Magistrate Judge Blewitt determined that there was no dispute that the controlling legal documents in this case were signed by Ms. Meeko, and that she assumed legal responsibility for adhering to the terms and responsibilities as delineated in these agreements. And, because Ms. Meeko failed to present any legally sufficient evidence to establish a genuine dispute of material fact, Magistrate Judge Blewitt recommends that SEPCO's motion be granted.

## II. Legal Standards

**A.    Summary Judgment**

    **1.    Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed.1983). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence

supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## 2. Undisputed Facts

Middle District of Pennsylvania Local Rule ("LR") 56.1 provides that "[a] motion for summary judgment filed pursuant to Fed. R. Civ. P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. LR 56.1 further requires that statements of fact include references to the parts of the record that support the statements. *See id*.

LR 56.1 additionally provides that "[t]he papers opposing summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth" in the moving party's statement of material facts. *See* M.D.

Pa. L.R. 56.1. A statement filed by the non-moving party that fails to respond to the paragraphs in the moving party's statement does not comply with L.R. 56.1. *See, e.g., Collins v. Bledsoe*, No. 10-1828, 2011 WL 3920151, at *11 (M.D. Pa. Sept. 7, 2011) (Kane, C.J.) (non-moving party's "counter statement of material facts in support of his opposition" failed to comply "with LR 56.1 inasmuch as the paragraphs in his statement do not correspond to the paragraphs in Defendants' statement."); *Dreibelbis v. Young*, No. 06-2055, 2007 WL 4344120, at *2 (M.D. Pa. Dec. 10, 2007) (Jones, J.) ("based on the plain language of Local Rule 56.1, Plaintiff's filing of his own Motion and Statement of Material Facts is not technically sufficient to either oppose Defendants' Motion or deny Defendants' Statement of Material Facts."); *Bond v. Town of Bloomsburg*, No. 05-859, 2006 WL 1050107, at *2 (M.D. Pa. Apr. 20, 2006) (McClure, J.) ("Plaintiff's counter-statement of material facts is not set forth in a responsive manner. Defendant's statement contains ninety-eight (98) paragraphs while plaintiff's counter-statement contains only nineteen (19) paragraphs."); *see also Sash v. Hogsten*, No. 07-475, 2009 WL 249649, at *2 (M.D. Pa. Feb. 2, 2009) (Rambo, J.) (LR 56.1 "does not provide for a non-moving party to file his own statement of material facts but instructs the non-moving party how to properly respond to the movants' statement of material facts.").

Lastly, LR 56.1 provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

**B.    Standard for Reviewing a Report and Recommendation**

Where objections to the Magistrate Judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir.1989) (citing 28 U.S.C. § 636(b)(1)(c)).  However, this only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6–7

(3d Cir.1984) (emphasis added). In conducting a *de novo review*, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F.Supp. 328, 330 (M.D. Pa.1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Goney, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F.Supp. 375, 376–77 (M.D. Pa. 1998).

### III. Discussion

On August 27, 2012, Ms. Meeko filed timely objections to the Report and Recommendation. Ms. Meeko first asserts that Magistrate Judge Blewitt erred when he disregarded the allegations in the Complaint because the Complaint is verified and therefore "stands not only as a part of the material record, but also acts as if it were an affidavit as signed by the Plaintiff." (Doc. 28, 4.) Second, Ms. Meeko claims that Magistrate Judge Blewitt incorrectly construed LR 56.1 because "no where in the Local Rule does it require a paragraph by paragraph response to defendant's statement of facts. Local Rule 56.1 simply requires that a counter statement be filed showing the disputed genuine issues. Plaintiff, in fact, did that." (*Id*.) Due to these claimed errors, Ms. Meeko requests that I conduct a *de novo* review of SEPCO's motion for summary judgment.

**A. Use of a Verified Complaint in Opposition to a Summary Judgment Motion**

Ms. Meeko's first objection to the Report and Recommendation claims that

11

Magistrate Judge Blewitt improperly disregarded the facts set forth in her Complaint in recommending that SEPCO's motion be granted. Ms. Meeko argues that because the Complaint was verified, it serves as an affidavit in opposition to SEPCO's motion.

The Third Circuit has indicated that a district court may treat a verified complaint as an affidavit in opposition to summary judgment. *See Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) ("[T]he complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)."); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); *see also Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 682 (8th Cir. 2012) ("a verified complaint is equivalent to an affidavit for summary judgment purposes"); *ACLU of Ky. v. Grayson Cnty.*, 591 F.3d 837, 844 n.2 (6th Cir. 2010) (same); *Moran v. Selig*, 447 F.3d 748, 759 n.16 (9th Cir. 2006) ("a verified complaint may serve as an affidavit for purposes of summary judgment if it is based on personal knowledge and if it sets forth the requisite facts with specificity."); *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002) ("A district court may treat a verified complaint as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)."); *Davis v. Carroll*, No. 03-131, 2012 WL 2880542, at *3 n.2 (D. Del. July 13, 2012) ("The Third Circuit has indicated that verified complaints may be treated as affidavits in opposition to summary judgment."); *Boomer v. Lewis*, No. 06-850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge.").[1]

---

[1] Often, reliance on a verified complaint in opposition to a summary judgment motion occurs when the non-moving party is proceeding *pro se*. In this case, the non-moving party is represented by counsel. Nevertheless, I see no reason to prohibit Ms. Meeko from relying on her verified Complaint in opposing SEPCO's

12

Here, the Complaint filed by Ms. Meeko in the Court of Common Pleas of Bradford County, Pennsylvania contains the following verification: "I verify that the statements made in the foregoing are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities." *(Compl.)* Thus, the verified statements in the Complaint that are based on Ms. Meeko's personal knowledge and are set forth with sufficient specificity can be considered in opposition to summary judgment, and the statements should not have been disregarded simply because they were contained in the verified Complaint instead of a separate affidavit. For the reasons that follow, however, even considering the statements in the verified Complaint, SEPCO's motion will be granted.

**B.    Non-Compliance with the Local Rules**

As detailed above, LR 56.1 requires "[t]he papers opposing summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth" in the moving party's statement of material facts. *See* M.D. Pa. L.R. 56.1. It is well-established in this District that a party opposing summary judgment must respond, paragraph-by-paragraph, to the moving party's statement of material facts. *See, e.g., Bond*, 2006 WL 1050107, at *1-*2. Thus, Ms. Meeko's claim that she need not respond paragraph-by-paragraph to SEPCO's statement of facts is contrary to the settled law in this District. Magistrate Judge Blewitt quite properly recognized that SEPCO's statement of facts could therefore be deemed admitted.

Nevertheless, while all facts contained in SEPCO's statement of facts could be deemed admitted due to Ms. Meeko's failure to comply with LR 56.1, I may alternatively "deem admitted only those facts from Defendants' Statement of Material Facts that are not in some way contradicted by Plaintiff's . . . [Counter-]Statement of Material Facts," and the

---

motion for summary judgment.

evidence cited in the counter-statement. *Dreibelbis*, 2007 WL 4344120, at *2; *see also Tome v. Harley Davidson Motor Co.*, No. 06-2155, 2007 WL 3125090, at *1 n.1 (M.D. Pa. Oct. 24, 2007) (Caldwell, J.) ("Tome filed a Statement of Material Facts; however, he did not file an answer to Defendants' Statement of Material Facts. Therefore, facts included in Defendants' Statement of Material Facts which are not opposed through Tome's own Statement of Material Facts are deemed admitted."). In this case, even disregarding the lack of compliance with LR 56.1, summary judgment is warranted on the breach of contract claim because Ms. Meeko's the verified Complaint and Affidavit fail to establish a genuine issue for trial.

At the outset, as recognized by Magistrate Judge Blewitt, Ms. Meeko has never clearly specified what legal theory she is proceeding on in this action. However, since her fraud claim has been dismissed and the breach of contract claim is the only claim remaining in this action, the case appears to be predicated on SEPCO's alleged failure to find a mutually agreeable location for the well pad. (*Compl.*, ¶ 60.)

To establish a breach of contract claim under Pennsylvania law, Ms. Meeko must demonstrate "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999) (citing *Gen. State Auth. v. Coleman Cable & Wire Co.*, 385, 365 A.2d 1347, 1349 (Pa. Cmwlth. 1976)). The essential elements of an enforceable contract are "whether both parties have manifested an intent to be bound by the terms of the agreement, whether the terms are sufficiently definite, and whether consideration existed." *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511, 516 (Pa. Super. 1995).

It is undisputed that Ms. Meeko and Elexco agreed to an enforceable contract on April 26, 2008. Thus, in interpreting the Lease, "the ultimate goal is to ascertain and give

14

effect to the intent of the parties as reasonably manifested by the language of their written agreement." *Callan v. Oxford Land Dev., Inc.*, 858 A.2d 1229, 1233 (Pa. Super. 2004) (citing *Highmark, Inc. v. Hosp. Serv. Ass'n of Northeastern Pa.*, 785 A.2d 93, 98 (Pa. Super. 2001)). Upon review of the Lease, it contains no provision prohibiting SEPCO from locating an oil well in the approximately thirty (30) acre meadow on the leased premises. Instead, the Lease merely restricts the Lessee from constructing a well "within four hundred feet (400') of existing building located on the leased premises without prior written consent from the Lessor." (*Lease*, *Addendum*, ¶ 5.) As a result, nothing under the terms of the Lease expressly barred Elexco, and subsequently SEPCO, from locating an oil well in the meadow.

However, Ms. Meeko reserved "the right to approve the location of all well sites, access roads, pipelines and related appliances constructed or installed on the leased premises." (*Lease*, *Addendum*, ¶ 2.) Such approval, though, "shall not be unreasonably withheld and shall be granted in a timely manner." (*Id.*)

SEPCO argues that because Ms. Meeko's evidence does not show a timely objection to the proposed well location, the non-disputed facts make clear that Ms. Meeko cannot establish a breach of contract claim. Specifically, SEPCO asserts that even if Ms. Meeko's signature on the letter from Mr. Sheets is not considered (based on the dispute as to whether Mr. McSloy improperly induced her to countersign the letter), the record is devoid of any evidence that Ms. Meeko objected to the well site *after* she received the letter. That is, because Ms. Meeko presents no evidence that she registered a timely objection to the well site or offered "proposed changes to the selected site within five (5) days" of receipt of the letter from Mr. Sheets, Ms. Meeko consented to the location by inaction. I agree with SEPCO that there is no evidence of record that Ms. Meeko timely and properly objected to the proposed well location. Therefore, SEPCO is entitled to judgment as a matter of law.

15

First, it is necessary to note that there are some disputes of non-material fact still outstanding, such as whether Mr. McSloy represented to Ms. Meeko at the January 22, 2011 meeting that the letter she countersigned related to a wetlands analysis, (*compare Compl.*, ¶ 38, *with Def.'s SMF*, ¶ 11), whether she initially refused to sign the letter because she did not have her glasses, (*compare Compl.*, ¶ 39, *with Def.'s SMF*, ¶ 12), and whether Ms. Meeko indicated that she wanted a lawyer to review the letter. (*Compare Compl.*, ¶ 36, *with Def.'s SMF*, ¶ 13.) These disputes do not automatically render summary judgment inappropriate, however, because "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 545 (3d Cir. 2012) (quoting *Anderson*, 477 U.S. at 247-48, 106 S. Ct. 2505).

In this case, the salient material facts have not been refuted by Ms. Meeko. These non-disputed and non-rebutted material facts include: (1) Ms. Meeko received the letter from Mr. Sheets no later than January 19, 2011, (*Compl.*, ¶ 40); (2) Ms. Meeko met Mr. McSloy at her property on January 22, 2011, (*Compl.*, ¶ 28; *Def.'s SMF*, ¶ 8); (3) at the January 22, 2011 meeting, Ms. Meeko received the map and was informed of the location of the proposed well site, (*Compl.*, ¶ 31; *McSloy Aff.*, ¶ 14); and (4) the letter required objections and proposed changes to the selected site to be conveyed within five (5) days of receipt of the letter to either Mr. Sheets or Mr. McSloy. (*Compl.*, Ex. D; *Def's SMF*, Tab 3.) Furthermore, Mr. McSloy's testimony that Ms. Meeko never objected to the proposed well location at the January 22, 2011 meeting, (*McSloy Aff.*, ¶¶ 18), has not been rebutted by Ms. Meeko with any evidence in the record. While Ms. Meeko's counter-statement of facts indicates that upon her review of the map on January 22, 2011, she "vehemently told Mr. McSloy that she would never agree to the placement of the well pad between her home

16

and the pond in the subject meadow," (*Pl.'s CSMF*, ¶ 20), this statement is not supported by the record as cited by Ms. Meeko. Instead, the corresponding citation to the Complaint simply states that "the well pad location as proposed by the map was and is unacceptable to the Plaintiff." (*Compl.*, ¶ 32.) To survive summary judgment, Ms. Meeko, as the non-moving party, "must present concrete evidence" demonstrating the existence of a genuine dispute of fact or otherwise refute SEPCO's claim that it is entitled to judgment as a matter of law. *Ideal Dairy Farms, Inc. v. John Labatt, Inc.*, 90 F.3d 737, 743 (3d Cir. 1996) (citing *Celotex*, 477 U.S. at 322-23, 106 S. Ct. 2548). The unsubstantiated statement in Ms. Meeko's counter-statement of facts, though, is not concrete, does not establish that she objected to the proposed well location during the January 22, 2011 meeting, and does not demonstrate a dispute of fact as to whether she conveyed an objection to Mr. McSloy during the meeting.

The record is likewise devoid of concrete evidence that Ms. Meeko timely objected to the proposed well location after the January 22, 2011 meeting. Although Ms. Meeko's testimony provides that she "contacted Defendant on numerous occasions between January 22, 2011 and February 2, 2011 and thereafter expressing my disagreement with the subject placement of the well pad," (*Meeko Aff.*, ¶ 2), her testimony: (1) fails to set forth the identity of "Defendant" whom she contacted during this time, thus failing to demonstrate that she conveyed her objections to Mr. Sheets or Mr. McSloy as required by the letter, (*Def.'s SMF*, Tab C);[2] (2) does not rebut Mr. Sheets' testimony that the first communication to him from

---

[2] In Ms. Meeko's Affidavit, she expressly states that she attempted to contact Mr. Sheets by telephone on February 3, 2011 and February 4, 2011. (*Meeko Aff.*, ¶¶ 4, 6.) She also states that after countersigning the letter at Mr. McSloy's request, she contacted him "on several occasions requesting a copy of the signed document." (*Id.* at ¶ 5.) Conversely, with respect to her testimony regarding her "disagreement with the subject placement of the well pad," she merely notes that "Defendant" was contacted on numerous occasions. (*Id.* at ¶ 8.)

17

Ms. Meeko after he sent the letter was a voice-mail left on his office phone on February 3, 2011, (*Sheets Aff.*, ¶ 4); (3) does not rebut Mr. Sheets' testimony that the message related only to questions about well site location and did not state an objection to the proposed well site, (*Id*. at ¶ 5), (4) does not rebut Mr. McSloy's testimony that Ms. Meeko did not inform him of an objection to the proposed well site between January 22, 2011 and February 2, 2011, (*McSloy Aff.*, ¶ 22); and (5) does not demonstrate that Ms. Meeko "propose[d] to move the boundaries or designate[d] an alternative site within a reasonable distance of the selected site" within five (5) days as set forth in Mr. Sheets' letter. (*Def.'s SMF*, Tab C.) Thus, because Ms. Meeko has presented no evidence that she timely objected to the proposed well site (by January 27, 2011, which was five (5) days, at the latest, from which she received the map identifying the proposed well location), Ms. Meeko consented to the location by her inaction. SEPCO, therefore, is entitled to summary judgment on the sole remaining claim in this action.

## IV. Conclusion

For the above stated reasons, the Report and Recommendation will be adopted as modified, and SEPCO's motion for summary judgment will be granted.

An appropriate order follows.

December 27, 2012 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge